J-A10024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CAROLYN RICKARD, ADMINISTRATRIX OF THE ESTATE OF WILLIAM RICKARD, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, | |
| Appellee | No. 774 WDA 2015 |

Appeal from the Order Entered April 28, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 6805-2014

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and SHOGAN, J.

DISSENTING MEMORANDUM BY SHOGAN, J.:      **FILED AUGUST 09, 2016**

I respectfully dissent on two bases.

Sometime prior to November of 2012, William Rickard ("the Deceased") filed for bankruptcy.[1]  On November 16, 2012, the Deceased's automobile was struck from behind on his way to work, rendering him paraplegic.  At the time of the accident, the Deceased occupied his personal

---

[1]  As noted by the Majority, the record below is sparse.  Majority Memorandum at 3 n.1.  Like the Majority, I have not cited to the location of the certified record for many facts and conclusions, but I have utilized a combination of attachments to documents, briefs, and the reproduced record to provide explanation.

vehicle and had $250,000 in underinsurance coverage through American National Property and Casualty Co. ("ANPAC").

While the Deceased was alive, he made a claim for underinsured benefits to ANPAC for the injury he sustained in the accident. As noted, the Rickards were debtors in bankruptcy, a bankruptcy which preceded the accident. The bankruptcy court appointed separate counsel to litigate the law suit, retaining the right to approve the settlement while the matter was in bankruptcy. ANPAC issued a check for the full coverage amount on January 13, 2014, which appointed counsel placed in his safe. At that point, the Western Pennsylvania Teamsters Welfare Benefit Fund ("the Fund"), of which the Deceased was a member, asserted a lien for the medical benefits it paid out for his treatment against any recovery by the Deceased for personal injury sustained in the accident.

On October 20, 2014, the bankruptcy court refused to approve the settlement or distribution before it, nor did it make any distribution on its own. Two days later, October 22, 2014, William Rickard died, allegedly from the injuries he sustained. The next day, October 23, 2014, because there was no settlement, no distribution, and no living payee, counsel returned the ANPAC check. The bankruptcy proceedings terminated a week later on October 29, 2014, when the Rickards' case was dismissed from bankruptcy with no settlement or distribution having been made.

Carolyn Rickard, Appellant, then submitted a wholly new claim for underinsurance benefits to ANPAC pursuant to the Pennsylvania Wrongful Death Act, 42 Pa.C.S. §8301, on behalf of herself and the Deceased's daughter, Sarah Rickard. Under this wrongful-death claim, a second check made payable to counsel and Appellant issued.

Upon receipt of the ANPAC check issued on the wrongful death claim, Appellant filed a petition for distribution before the common pleas court pursuant to Allegheny County Local Rule 2039 seeking distribution of underinsurance funds she received. The common pleas court determined that it was bound by collateral estoppel because the "issue before it [is] virtually identical to the issue decided by" the bankruptcy court. Trial Court Opinion, 4/28/15, at unnumbered 2. The Majority agrees. Majority Memorandum at 5. I do not.

First, Pennsylvania courts have long recognized that a wrongful death action is separate and distinct from a survival action. *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651 (Pa. Super. 2013). "[W]hile wrongful death actions are derivative of decedent's injuries, they are not derivative of decedent's rights, and therefore belong to the decedent's beneficiaries as opposed to the deceased individual." *MacPherson v. Magee Memorial Hosp. for Convalescence*, 128 A.3d 1209, 1226 (Pa. Super. 2015) (citing *Pisano*, 77 A.3d at 660). A survival claim and a wrongful death claim are separate and distinct even though they originate

from the same wrongful act. As we explained in **Pisano**, under the Pennsylvania wrongful death statute, recovery passes to the limited group of beneficiaries defined in 42 Pa.C.S. § 8301(b), "the spouse, children or parents of the deceased." **Id**.

> An action for wrongful death may be brought by the personal representative of those persons entitled to receive damages for wrongful death under the statute. **Tulewicz v. S.E. Pa. Transp. Auth.**, 529 Pa. 588, 596, 606 A.2d 427, 431 (1992). . . . Wrongful death damages are established for the purpose of compensating the spouse, children, or parents of a deceased for pecuniary loss they have sustained as a result of the death of the decedent. **Tulewicz**, 529 Pa. at 597, 606 A.2d at 431. . . .
>
> A survival action, on the other hand, is brought by the administrator of the decedent's estate in order to recover the loss to the estate of the decedent resulting from the tort. **Tulewicz**, 529 Pa. at 597, 606 A.2d at 431. . . .
>
> These two actions are designed to compensate two different categories of claimants the spouse and/or members of the decedent's family for wrongful death of the decedent, and the decedent herself through the legal person of her estate. **Tulewicz**, 529 Pa. at 597, 606 A.2d at 431

**Kiser v. Schulte**, 648 A.2d 1, 4 (Pa. 1994) (some citations omitted). Thus, in a wrongful death suit, claims by the statutory beneficiaries are brought for and on behalf of the statutory beneficiaries to obtain compensation for their loss resulting from the deceased's death. Because the claims are separate and distinct, and because the wrongful death action "bears no relation to the damages recoverable by a decedent who sues for the injury while living," **Stegner v. Fenton**, 40 A.2d 473, 475 (Pa. 1945), I disagree with the trial

court and the Majority. The Deceased's contractual obligation to the Fund did not transfer to the wrongful-death claim.

Second, I also disagree that collateral estoppel applies.

Collateral estoppel is applicable when the issue decided in a prior adjudication is identical to that presented in the later action; there was a final judgment on the merits; the party against whom the doctrine is asserted was a party to the prior adjudication or was in privity with such a party; and the party against whom it is asserted had a full and fair opportunity to litigate the issue in the prior adjudication.

*John T. Gallaher Timber Transfer v. Hamilton*, 932 A.2d 963, 967–968 (Pa. Super. 2007).

In the present case, bankruptcy counsel asked the bankruptcy court to approve the settlement involving a living client in receipt of medical benefits from the Fund, but the bankruptcy court refused. *In re: William J. Rickard and Carolyn M. Rickard*, Bankr. No. 10-24821-JAD (Bankr. W.D. Pa., filed October 20, 2014). Thus, there was no settlement. Furthermore, there currently is no bankruptcy action pending. William Rickard has died, but his survival action continues. Moreover, Appellant and the Deceased's minor daughter have discrete claims under the Pennsylvania Wrongful Death Statute, and these claims did not accrue until after the bankruptcy court's opinion and order.

The issue before us is whether a wrongful death beneficiary's recovery under the Pennsylvania Wrongful Death Act is subject to a subrogation claim for benefits paid on behalf of the decedent for medical treatment during the

decedent's lifetime. This issue was not before the bankruptcy court, nor could it have been, as all of the relevant bankruptcy proceedings occurred during the Deceased's lifetime. Thus, under the first prong of the test for collateral estoppel, the issue decided in the bankruptcy court is not identical to that presented herein.

The second prong requires a final adjudication on the merits. A motion to approve settlement was before the bankruptcy court, and the court denied it. The Deceased's death two days later gave rise to a wholly new claim, and seven days after that the debtors' case was dismissed from bankruptcy. There was no settlement, no determination on disbursement, and the bankruptcy court did not address the merits of whether the Fund's subrogation lien attaches to a wrongful death recovery.

The third prong requires that the party against whom the doctrine is asserted was a party or in privity with a party in the prior case. Sarah Rickard, the Deceased's minor daughter, was not a party to the bankruptcy proceedings. As a statutory beneficiary, her right to recovery is separate and distinct from her mother's claim.

Regarding the fourth prong, it is clear that no right to recovery of wrongful death benefits had accrued either to Appellant or Sarah Rickard prior to the entry of the bankruptcy court's order. Therefore, neither one had any opportunity to litigate the issue of whether the Fund's lien attached to their recovery.

I would conclude that the issue the Fund sought to preclude the common pleas court from deciding was not before the bankruptcy court, could not have been brought before the bankruptcy court, and was therefore, not decided by the bankruptcy court. Therefore, in my view, there is no foundation for the doctrine of collateral estoppel to have been applied in this case. For these reasons, I dissent, and would remand to the common pleas court.